UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CASCADE SETTLEMENT SERVICES
LLC, *et al.*,

                    Plaintiffs,

          v.

ADT LLC, *et al.*,

                    Defendants.

**MEMORANDUM DECISION AND
ORDER**

26-cv-0478 (BMC)

**COGAN**, District Judge.

This is a diversity-jurisdiction contract case concerning the entitlement to settlement

funds from an antitrust class action also before the Court.  The parties have cross-moved for

partial judgment on the pleadings as to the declaratory judgment action.  For the reasons below,

plaintiffs' motion is granted, and defendants' motion is denied.

## BACKGROUND

Cascade Settlement Services LLC ("Cascade") is in the business of buying rights to class

action settlement funds.  These purchases are a bit of a gamble because, generally, at the time of

sale, the value of any settlement (or if there will even be a settlement) is not set in stone.

Nonetheless, it is apparently a fruitful business, and in 2013, Cascade entered into such a

contract, titled the Asset Purchase and Sale Agreement ("APSA"), for $1.8 million with ADT

LLC ("ADT").

As the APSA itself recognizes, if the case was never settled, and the class lost at trial,

Cascade's return on that $1.8 million would be $0.00.  But the case did settle – for $5.6 billion –

and the Second Circuit affirmed the district court's final settlement approval.  See Fikes

Wholesale, Inc. v. Visa U.S.A., Inc., 62 F.4th 704, 712 (2d Cir. 2023).  It was therefore a surprise to Cascade when ADT filed claims with the court-appointed settlement administrator.

Central to the parties' dispute is the meaning of "Litigation" as a capitalized, operative term in the APSA:

> On February 20, 2009, a Second Amended Class Action Complaint entitled In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (Case No. 1:05-md-01720-JG-JO) ("Litigation") was filed in the United States District Court for the Eastern District of New York ("District Court").  If the plaintiffs in the Litigation either prevail in the Litigation or such Litigation results in a settlement ("Settlement Event"), the Seller may be entitled to a monetary recovery ("Asset").  Whether such recovery will occur is unknown by Seller and Purchaser at the time of this Agreement.  If no Settlement Event takes place, the Asset will have no value.

ADT contends that the "term 'Litigation' specifically refers to the Second Amended Complaint, and the term 'Asset' thus refers to a recovery based on the Second Amended Complaint."  Therefore, according to ADT, Cascade lost any right to ADT's settlement funds after the Third Amended Complaint was filed.

On the other hand, Cascade contends that the inclusion of the case caption and number shows that ADT conveyed its right to any settlement funds arising from the case, untethered to any specific complaint.  Thus, according to Cascade, Cascade kept its right to ADT's settlement funds notwithstanding the Third Amended Complaint having been filed.[1]

Cascade filed suit in California state court for breach of contract, anticipatory breach, and declaratory relief.  ADT removed the case to the Northern District of California, and it was thereafter transferred here because of its relation to the class action.

---

[1] One related issue raised by the pleadings is what impact ADT's merger with another entity, Protection One, has on Cascade's right to ADT's settlement funds.  Ostensibly, before the merger (and before this contract), both ADT and Protection One would have been entitled to an independent amount of the settlement.  It is conceivable that the terms of the merger gave Protection One's interest to ADT, raising a question of whether that interest now belongs to Cascade.  This issue was not briefed, however, and will presumably turn on the terms of the merger.

2

**DISCUSSION**

## I.    <u>Legal Standard</u>

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." <u>Miller v. Lamanna</u>, 169 F.4th 118, 129 (2d Cir. 2026) (quotations omitted); <u>see</u> <u>Kondaur Cap. Corp. v. Cajuste</u>, 849 F. Supp. 2d 363, 366 (E.D.N.Y. 2012) ("The granting of a [12(c)] motion . . . is appropriate only if, with all reasonable inferences drawn in favor of the non-moving party, the non-moving party has failed to allege facts that would give rise to a . . . plausible defense.").

Rule 12(c) motions are generally filed by defendants, but not always. "When a plaintiff is the moving party, 'the plaintiff may [not prevail] when the [defendants'] answer raises issues of fact that, if proved, would defeat recovery.'" <u>Id.</u> (quotations omitted). Nonetheless, the "Court is 'not bound to accept as true legal conclusions couched as factual allegations.'" <u>Id.</u> (quoting <u>LaFaro v. N.Y. Cardiothoracic Grp., PLLC</u>, 570 F.3d 471, 476-77 (2d Cir. 2009)). "'[B]ald contentions, unsupported characterizations, and legal conclusions' will not defeat the motion.'" <u>Id.</u> (quotations omitted).

## II.    <u>Analysis</u>

As a threshold matter, when "a plaintiff moves for judgment under Rule 12(c) on claims in [its] own pleading, allegations in that pleading that have been denied by the non-moving party are generally deemed to be false." <u>Allstate Ins. Co. v. D'Arienzo</u>, 530 F. Supp. 3d 274, 281 (E.D.N.Y. 2021). In the same vein, a defendant can raise new facts in their answer by bringing affirmative defenses, which may likewise be a threshold barrier to a plaintiff's Rule 12(c) motion. <u>See, e.g.</u>, <u>Perdum v. Forest City Ratner Cos.</u>, No. 11-cv-315, 2014 WL 12829216, at *4 (E.D.N.Y. May 30, 2014) ("[Defendants] raise five affirmative defenses that are at least

3

plausibly capable of defeating the plaintiff's recovery [and thus] plaintiff is . . . not entitled to judgment on the pleadings").

According to ADT, Cascade's motion is dead on arrival because ADT largely denied the line-by-line assertions in Cascade's complaint, and because ADT's answer raised 18 affirmative defenses. That's wrong. ADT's denials are irrelevant because the facts that matter to the declaratory judgment action – whether the parties entered into a contract, and what that contract says – are undisputed. The parties only dispute what the contract means, but that is not a question of fact.

Likewise, ADT's affirmative defenses are no barrier to ruling on Cascade's motion because ADT alleges no facts in support of them. All of ADT's "affirmative defenses" are one-line legal conclusions; *e.g.*, that a "novation of the contract in dispute has occurred," or that "[p]erformance is excused due to the impracticality of rendering the requested performance under the contract." That simply does not cut it. See, e.g., Shaub & Williams, LLP v. Augme Techs., Inc., No. 13-cv-2202, 2014 WL 625390, at *9 (S.D.N.Y. Feb. 14, 2014) (striking affirmative defense where defendant had "not alleged any fact supporting the assertion"); accord HANDL Cap. 531, LLC v. New Generation Holdings, LLC, No. 25-cv-6318, 2026 WL 440558, at *3 (E.D.N.Y. Feb. 17, 2026) ("What defendant has done is copy a bunch of boilerplate [affirmative] defenses from a formbook . . . that cannot be good enough."). Accordingly, the Court proceeds to the merits of the parties' motions.

### A.    Governing Law

The parties agree that California law governs the contract. "Contract interpretation is a question of law," Schertzer v. Bank of Am., NA, 109 F.4th 1200, 1208 (9th Cir. 2024), and "[t]he fundamental goal of contract interpretation is to give effect to the mutual intent of the

4

parties as it existed at the time of contracting," U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc., 281

F.3d 929, 934 (9th Cir. 2002).  The parties' "intent is to be inferred, if possible, solely from the

written provisions of the contract," Cnty. of Fresno v. Fresno Deputy Sheriff's Ass'n, 51 Cal.

App. 5th 282, 292, 264 Cal. Rptr. 3d 534, 543 (Cal. Ct. App. 2020), "if the language is clear and

explicit, and does not involve an absurdity," Cal. Civ. Code § 1638.  As the Ninth Circuit put it:

> California law provides several principles that guide [the] inquiry into what the
> parties mutually intended a contract term to mean.  Synthesizing these principles,
> [the Court should] consider whether a proffered interpretation: (1) aligns with the
> ordinary and popular meaning of the term; (2) gives effect to all of a contract's
> provisions or renders some superfluous; (3) is supported by reading the contract
> as a whole; (4) would produce an absurd or inequitable result.

Schertzer, 109 F.4th at 1208.

However, when a term is "used by the parties in a technical sense, or [if] a special

meaning is given to [the term] by usage," the "ordinary and popular" meaning need not be

followed.  Cal. Civ. Code § 1644.  Here, the APSA gave "Litigation" a special meaning, i.e., it

quantifies certain text preceding the term.  Thus, the Court need not consider the ordinary and

popular meaning.

### B.    Give Effect to the Contract's Provisions

"An interpretation which gives effect to all provisions of the contract is preferred to one

which renders part of the writing superfluous, useless or inexplicable."  Schertzer, 109 F.4th at

1209 (quoting Carson v. Mercury Ins. Co., 210 Cal. App. 4th 409, 420, 148 Cal. Rptr. 3d 518,

528 (Cal. Ct. App. 2012)).  ADT's "interpretation of [the term] violates this principle," id.,

because under ADT's reading, each of the following provisions would be rendered useless or

inexplicable:

- **Recital D**:  "All terms used herein and not defined herein shall have the meanings
  given such terms in the Litigation filings."

5

- **Paragraph 2.3**:  "[Cascade] may require [ADT]'s reasonable assistance, and [ADT] agrees to provide such reasonable assistance to [Cascade], in the event that a claims administrator appointed in the Litigation ("CA") . . ."

- **Paragraph 3.6(ii)**:  [ADT] warrants that, should a Settlement Event occur, if asked by the District Court, Lead Counsel, the CA or any other entity affiliated with the settlement, [ADT] will state that (1) [ADT] never intended to opt-out of the Litigation; (2) [ADT] never gave any entity any indication of an intent to opt-out of the Litigation; and (3) [ADT] never authorized any entity to opt-out of the Litigation on [ADT]'s behalf.

If "Litigation" was tethered to the Second Amended Complaint, the phrase "Litigation filings" in Recital D would make little or no sense.  First, a complaint is a single filing, and the Second Amended Complaint was not filed with exhibits or any extra documents.  See In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litig., No. 1:05-md-01720, ECF No. 1654 (E.D.N.Y. Oct. 19, 2012).  Second, although the Second Amended Complaint dedicates over four pages to defining various "Terms of Art," none of them appear in the APSA. In fact, some of the APSA's operative terms, such as "Lead Counsel," are not defined in either the APSA or the Second Amended Complaint.  Rather, the term "Lead Counsel" has been redefined by other filings in the class action, throughout its over twenty-year history.[2]  This suggests that the APSA's use of "terms in the Litigation filings" (and thus, "Litigation") is not tethered to the Second Amended Complaint.

Likewise, ADT's reading would render Paragraph 2.3 inexplicable.  Specifically, the clause, "a claims administrator appointed in the Litigation . . ." would make no sense because claims administrators are appointed to at the time a settlement is preliminarily approved, not when a complaint is filed.  See In re: Payment Card Interchange Fee and Merchant-Discount

---

[2] See, e.g., In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litig., No. 1:05-md-01720, ECF No. 50 (E.D.N.Y. Dec. 13, 2005) (original motion to appoint Lead Counsel), ECF No. 6723 (E.D.N.Y. Oct. 19, 2016) (Minute Entry reserving "decision on the motions relating to the appointment of lead counsel"); ECF No. 8841 (E.D.N.Y. June 1, 2023) (memorandum in opposition to "Motion for Appointment as Lead Counsel").

6

Antitrust Litig., No. 1:05-md-01720, ECF No. 1745 (E.D.N.Y. Nov. 27, 2012).  And the claims administrator in the class action, Epiq Systems, Inc., has remained on the case notwithstanding the subsequent filing of the Third Amended Complaint.

Lastly, Paragraph 3.6(ii) would also make no sense because class members cannot "opt-out of" a complaint.  Rather, class members may sometimes opt out of a class action settlement, and complaints do not settle – cases settle.  Thus, the "Litigation" that Paragraph 3.6(ii) contemplates class members opting out of has nothing to do with a complaint.  In order for these (and other) provisions to be given any effect, the term "Litigation" must refer to the case, untethered to any specific complaint.

### C.      Contract as a Whole

"Contracts are interpreted as a whole 'so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.'"  Schertzer, 109 F.4th at 1210 (quoting Cal. Civ. Code § 1641).  "The meaning of the words contained in a contract is to be determined not from a consideration of the words alone but from a reading of the entire contract."  Brobeck, Phleger & Harrison v. Telex Corp., 602 F.2d 866, 872 (9th Cir. 1976) (quoting Sunset Sec. Co. v. Coward McCann, Inc., 47 Cal. 2d 907, 911, 306 P.2d 777 (1957)).

Reading the APSA as a whole supports Cascade's reading.  What Cascade purchased for $1.8 million was "any and all of [ADT]'s right, title and interest in and or associated with, or connected in any manner to, any Asset that may arise from the Litigation."  This kind of open-ended, forward-looking language appears throughout the APSA, and ADT's narrow reading of "Litigation" simply cannot be reconciled with it.

### D.    Absurdity or Inequity

The "interpretation of terms in a contract 'must be fair and reasonable, not leading to absurd conclusions.'"  Schertzer, 109 F.4th at 1211 (quoting State Compensation Ins. Fund v. Dep't of Ins., 96 Cal. App. 5th 227, 236, 314 Cal. Rptr. 3d 78, 86 (Cal. Ct. App. 2023)).  The Court must "avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable."  Barroso v. Ocwen Loan Servicing, LLC, 208 Cal. App. 4th 1001, 1013, 146 Cal. Rptr. 3d 90, 99 (Cal. Ct. App. 2012).

The APSA recognizes that Cascade's entire business model is "purchasing claims from entities entitled to recover funds from both existing class action lawsuit settlements and from pending class action litigation that may or may not result in a settlement."  ADT's reading would, at the drop of a hat (i.e., at the filing of a new complaint), destroy Cascade's interest, for which it paid ADT $1.8 million.  That is the kind of "extraordinary, hard, unjust, or inequitable" interpretation the Court must avoid.  See id.

Moreover, the APSA specifically uses "Case No. 1:05-md-01720-JG-JO" when defining "Litigation."  The caption's inclusion of "JG-JO" refers to the district and magistrate judge assigned to the case which, at the time, were District Judge John Gleeson ("JG") and Magistrate Judge James Orenstein ("JO").  Today, the caption reads as "Case No. 1:05-md-01720-BMC-JAM," referring to the undersigned ("BMC") and Magistrate Judge Joseph A. Marutollo ("JAM").

Under ADT's reading, once "Second Amended Complaint" was inapplicable, Cascade's interest in the "Asset" arising from the "Litigation" was destroyed.  It therefore follows that, under the same reading, once "JG-JO" was no longer applicable, Cascade's interest was likewise destroyed.  But it would be ludicrous to conclude that Cascade would have lost its

8

interest just because the case was transferred to a different set of judges. ADT's conclusion that Cascade lost its interest just because an amended complaint was filed is equally absurd. See Schertzer, 109 F.4th at 1211.

It is clear to the Court, "solely from the written provisions of the contract," Cnty. of Fresno, 51 Cal. App. 5th at 292, 264 Cal. Rptr. 3d at 543, that the parties intended to contract for ADT's right to the settlement funds arising out of the class action as a lawsuit, untethered to any particular complaint. Accordingly, the Court need not consider any extrinsic evidence offered by either party.

## CONCLUSION

Plaintiffs' motion for partial judgment on the pleadings is granted, and defendants' motion for partial judgment on the pleadings is denied. Plaintiffs are directed to file a proposed form of declaratory judgment within seven days.

**SO ORDERED.**

_Brian M. Cogan_
U.S.D.J.

Dated: Brooklyn, New York
     May 11, 2026

9